THE STATE, EX REL. BOLSINGER, *v.* ORIDGE.

(Decided March 7, 1938.)

*Mr. Robert A. Black*, for relator.

*Mr. Simeon M. Johnson, Mr. Frederick W. Johnson* and *Mr. George H. Johnson*, for respondent.

MATTHEWS, J. This action invokes the original jurisdiction of this court in *quo warranto.*

The relator, claiming to be invested with the title to the office of president of council of the city of Norwood from the first day of December, 1937, to the first day of January, 1940, and alleging that respondent,

without warrant, has usurped that office and is assuming to exercise the powers, duties, and rights of the office, asks that the court declare relator's right and pronounce judgment ousting the respondent from the office.

The cause comes before the court upon the relator's demurrer to the respondent's answer. We are, therefore, not confronted with any issue of fact.

It appears that at the municipal election of the city of Norwood in November, 1935, Allen C. Roudebush was elected mayor, Amos L. Elyer, president of council, and the relator, a member of council for the term beginning January 1, 1936, and ending on December 31, 1937. They all qualified and entered upon the duties of their respective offices.

Upon the organization of the city council on January 1, 1936, the relator was elected by that body as its president pro tem, to serve during his term as a member of that body.

At the municipal election of November 2, 1937, Allen C. Roudebush was re-elected mayor and Amos L. Eyler was re-elected president of council. The relator was not elected to any office at that election. On November 17, 1937, Eyler was notified of his election and a certificate of election was issued to him. On November 26, 1937, Eyler took the oath of office as president of council and qualified in all respects as such officer for the term commencing on January 1, 1938.

On December 1, 1937, Allen C. Roudebush, having been appointed to the office of judge of the Court of Common Pleas of Hamilton county, resigned as mayor for the term expiring December 31, 1937, and, on the same date Eyler took the oath and filed his bond as mayor, and entered upon the duties of that office. On that date, the relator was acting as president pro tem of council, and upon Eyler, the duly elected president of council, succeeding to the office of mayor, he, the

relator, by operation of law, became president of council and took the official oath as such.

Allen C. Roudebush did not qualify for the office of mayor for the term commencing on January 1, 1938. Eyler did not assume the duties of president of council, to which he had been elected on November 2, 1937, and for which he had qualified on November 26, 1937, but continued to discharge the duties of mayor, and on that date appointed the respondent to the office of president of council for the term commencing January 1, 1938, and ending December 31, 1939.

From this recital it is apparent that the respondent is at least the *de facto* president of council of the city of Norwood. The burden rests upon the relator to allege and prove that he is entitled to the office under the law and that the respondent unlawfully holds and exercises it. Unless he sustains this burden, no judgment of ouster may be rendered. *State, ex rel. Heer,* v. *Butterfield,* 92 Ohio St., 428, 111 N. E., 279. A private citizen, having no title to the office himself, cannot invoke the issuance of the high prerogative writ of *quo warranto* to test the title of the incumbent to the office. *State, ex rel. Joecken,* v. *Lynch,* 123 Ohio St., 676, 177 N. E., 765; *Klick* v. *Snavely,* 119 Ohio St., 308, 164 N. E., 233.

Therefore, our first inquiry should be concerning the basis of the relator's claim to the office. Do the facts show he is the rightful president of council?

The contention of the relator, stated in the language of his counsel is that:

''Relator assuming office on December 1, 1937, holds over until his successor is elected, by the people, and qualified.''

Stated in this form, the apparent answer is that the facts show that the conditions for termination of his right have come to pass. His successor has been elected by the people, and he has qualified.

But what is the duration of the tenure of a president

of council who has succeeded to that office by operation of law by reason of having been the president pro tem of council when the vacancy occurred in the office of the president of council? This question is answered by a true construction of Sections 8, 10, 4210, 4272, 4273 and 4274 of the General Code. We quote these sections:

"Sec. 8. A person holding an office or public trust shall continue therein until his successor is elected or appointed and qualified, unless otherwise provided in the Constitution or laws."

"Sec. 10. When an elective office becomes vacant, and is filled by appointment, such appointee shall hold the office until his successor is elected and qualified. Unless otherwise provided by law, such successor shall be elected for the unexpired term at the first general election for the office which is vacant that occurs more than thirty days after the vacancy shall have occurred. * * * This section shall not be construed to postpone the time for such election beyond that at which it would have been held had no such vacancy occurred, nor to affect the official term, or the time for the commencement thereof, of any person elected to such office before the occurrence of such vacancy."

"Sec. 4210. Within ten days from the commence- ment of their term, the members of council shall elect a president pro tem, a clerk, and such other employees of council as may be necessary, and fix their duties, bonds and compensation. The officers and employees of council shall serve for two years, but may be re- moved at any time for cause, at a regular meeting by a vote of two-thirds of the members elected to coun- cil."

"Sec. 4272. The president of council shall be elected for a term of two years, commencing on the first day of January next after his election, and shall serve until his successor is elected and qualified. He

shall be an elector of the corporation, and shall preside at all regular and special meetings of council, but shall have no vote therein except in case of a tie.''

''Sec. 4273. When the mayor is absent from the city, or is unable for any cause to perform his duties, the president of the council shall be the acting mayor. While the president of the city council is acting as mayor, he shall not serve as president of council.''

''Sec. 4274. In case of the death, resignation or removal of the mayor, the president of council shall become the mayor, and serve for the unexpired term, and until the successor is elected and qualified. Thereupon the president pro tem of council shall become president thereof, and shall have the same rights, duties and powers as his predecessor. The vacancy thus created in council shall be filled as other vacancies, and council shall elect another president pro tem.''

The relator contends that by the language of Section 4274, General Code, he succeeded to the ''rights, duties, and powers'' of his predecessor, and that, as his predecessor would have served until his successor was elected and qualified, he too is invested with the office for the same period by virtue of this special provision, thereby making it unnecessary to consider the general provisions of Sections 8 and 10, General Code. That raises the question of whether the title to the office is included within the meaning of the word ''rights'' in Section 4274, General Code, or whether the ''rights'' referred to result from the fact that the incumbent has title. We are of the opinion that the latter construction is the correct one. The title and tenure arise as a result of the application of the law to the facts and antedate the ''rights, duties, and powers'' resulting from incumbency of the office.

We think also that it must be concluded that the relator was never appointed to fill a vacancy in the

office of president of council. He was elected to council by the people and to president pro tem of council by the members thereof. In each instance he was elected in the manner prescribed by law. He was appointed to neither. And he became president of council by operation of law through these two elections. Bearing these facts in mind, *State, ex rel. Kopp,* v. *Blackburn,* 132 Ohio St., 421, 8 N. E. (2d), 434, and *State, ex rel. Gahl,* v. *Lutz,* 132 Ohio St., 466, 9 N. E. (2d), 288, construing Sections 8 and 10, General Code, are decisive of all the questions raised in this action. In *State, ex rel.,* v. *Blackburn, supra,* at pages 427, 428 and 429, the court said:

"The next question we are obliged to answer is whether the death of John Kopp, on November 26, 1936, after he had qualified, created such a vacancy as could be filled by appointment as provided by law. In order to answer this question it becomes necessary to examine Sections 8 and 10, General Code. We quote them in full:

"Section 8. 'A person holding an office or public trust shall continue therein until his successor is elected or appointed and qualified, unless otherwise provided in the Constitution or laws.'

"Section 10. 'When an elective office becomes vacant, and is filled by appointment, such appointee shall hold the office until his successor is elected and qualified. Unless otherwise provided by law, such successor shall be elected for the unexpired term at the first general election for the office which is vacant that occurs more than thirty days after the vacancy shall have occurred. This section shall not be construed to postpone the time for such election beyond that at which it would have been held had no vacancy occurred, nor to affect the official term, or the time for the commencement thereof, of any person elected to such office before the occurrence of such vacancy.'

"We believe that a clear distinction between an elected and an appointed officer, in their authority to hold over, may be found in the language of these two sections.

"Under Section 8, the respondent, who is the present incumbent, would continue to hold office until his successor *is elected or appointed and qualified.* In the instant case there was a successor, John Kopp, elected and qualified. True he did not occupy the office, but the statute does not say 'until his successor is elected and qualified and *occupies* the office.' Title to the office does not depend upon occupancy but rather occupancy of the office depends upon the title or right to hold the office.

"A distinction to be observed between these two sections is that Section 8 is general in scope and character, while Section 10 is specific. Section 8 applies to persons holding office generally, while Section 10 prescribes the tenure of appointees. Section 10 says 'such appointee shall hold the office until his successor is elected and qualified.' The respondent, Blackburn, not being an appointee, could not rely upon Section 10, but would be required to rely upon Section 8, thereby only holding 'until his successor is elected or appointed and qualified.' If the respondent, instead of having been previously elected had been appointed, the situation would be entirely different for the reason that there could not be a vacancy predicated upon another vacancy. In other words, a person elected to office serves until his successor is elected or appointed and qualified, while an appointee continues to hold over until his successor is elected and qualified. Applying these principles to the instant case, we have two controlling factors which would prevent the respondent holding over under Section 8. In the first place a successor in the person of John Kopp was elected and qualified. In the second place, due to the

death of John Kopp, who had title to the office, a successor was appointed and qualified.''

It would be difficult to find language more directly applicable. The relatrix in that case was the appointee to fill the vacancy, and the court awarded the writ in her favor against the elected incumbent. In the case at bar the respondent is the appointee and the relator seeks to oust him, basing his title on the fact that he had previously occupied the office through election and succession by operation of law. The reasoning clearly requires a denial of the writ.

*State, ex rel. Gahl,* v. *Lutz, supra,* is distinguishable in that the defendant was an appointed officer and it was sought to supplant him by a second appointment contrary to the provisions of Section 10, General Code. If the relator had been appointed to fill the vacancy the case would be applicable, but as he was not appointed, it has no application. The case does make clear the distinction between Sections 8 and 10, General Code.

We do not regard *State, ex rel. Hoyt,* v. *Metcalfe,* 80 Ohio St., 244, 88 N. E., 738, as applicable. The real question in that case was whether Section 13 of Article IV of the Constitution had been repealed by Article XVII of the Constitution, adopted November 7, 1905. The court held that it had not been, and that conclusion determined the issue between the contestants for the office of judge, as Section 13 was clear.

For these reasons, the court holds that no cause of action for the issuance of the writ is shown, and as the demurrer searches the record, the court finds the petition insufficient in law, and, unless amendment is desired, judgment may be entered denying the writ and dismissing the petition.

*Writ denied.*

Ross, P. J., and HAMILTON, J., concur.